IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

FLORENCE DIVISION

| | |
|---|---|
| Eric Kelley,<br><br>        Plaintiff,<br><br>vs.<br><br>United Parcel Service, Inc.,<br><br>        Defendant. | Civil Action No. 4:10-cv-01420-RBH-TER |

**DEFENDANT UNITED PARCEL SERVICE, INC.'S**
**REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Susan P. McWilliams
smcwilliams@nexsenpruet.com
NEXSEN PRUET, LLC
1230 Main Street, Suite 700
Columbia, South Carolina 29201
Tel: 803-253-8221
Fax: 803-727-1476

Glenn G. Patton (admitted *pro hac vice*)
glenn.patton@alston.com
ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, Georgia 30309
Tel: 404-881-7000
Fax: 404-881-7777

Charles A. Gartland II (admitted *pro hac vice*)
chuck.gartland@alston.com
ALSTON & BIRD LLP
The Atlantic Building
950 F Street, NW
Washington, DC 20004
Tel: 202-239-3636
Fax: 202-654-4808

I. INTRODUCTION

Plaintiff Eric Kelley ("Plaintiff") was discharged by Defendant United Parcel Service, Inc. ("Defendant") for failing to comply with the clear and repeated work instructions of both his immediate supervisor and the manager, thereby seriously jeopardizing Defendant's ability to meet its customer service commitments with respect to hundreds of its most time-sensitive packages. Defendant demonstrated in its initial brief that there are no genuine issues of material fact and that Plaintiff's claim under Title VII of the Civil Rights Act of 1964 ("Title VII") fails as a matter of law because (1) he cannot establish a *prima facie* of discriminatory discharge, as there is absolutely no evidence that Defendant discharged Plaintiff because of race, nor is there any valid comparator evidence; and (2) even if he could demonstrate a *prima facie* case, there is no evidence that Defendant's legitimate, non-discriminatory reasons for his discharge were a pretext for unlawful discrimination.

Just as Plaintiff failed to obey his supervisor's and manager's clear instructions, his opposition to Defendant's Motion for Summary Judgment disregards the well-settled law and undisputed, material facts that warrant summary judgment in Defendant's favor. Instead, Plaintiff bases his opposition on ad-hoc and unpersuasive justifications for his insubordinate conduct, self-serving speculation regarding Defendant's motives, and unsupported arguments regarding Defendant's treatment of an alleged comparator who, under Fourth Circuit law, is clearly not similarly situated to Plaintiff. Accordingly, for the reasons set forth below, Plaintiff's arguments in opposition to Defendant's summary judgment motion are without merit and should be rejected by the Court.

II.     ARGUMENT AND CITATION OF AUTHORITY

Defendant demonstrated in its initial brief that Plaintiff's Title VII claim fails because (1) Plaintiff cannot establish a *prima facie* case of discriminatory discharge; and (2) even if Plaintiff could establish a *prima facie* case (which he cannot), Plaintiff cannot demonstrate that Defendant's legitimate, non-discriminatory reasons for his discharge were a pretext for unlawful race discrimination. (*See* Def.'s Mem. of Law in Supp. of Its Mot. for Summ. J. [Docket No. 45-1] ("Def.'s Summ. J. Br.") at 15-20.)[1] Unable to refute Defendant's well-supported factual and legal arguments, Plaintiff instead submits a response clearly designed for a single purpose — to muddy the record with unsupported fact allegations and conclusory legal arguments in the hope that the mere appearance of factual or legal complexity will convince the Court that summary judgment is inappropriate. Defendant seeks in this brief to re-focus attention on the material facts and controlling law that warrant summary judgment in Defendant's favor.[2][3]

---

[1] Plaintiff concedes that there is no direct evidence in this case and that his claim is to be analyzed using the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). (*See* Pl.'s Resp. at 9; Pl. 9/30/11 Dep. 26-28.)

[2] Defendant also demonstrated in its initial brief that, to the extent Plaintiff intended to assert claims based on disciplinary action other than his discharge, such claims are both untimely and barred for failure to exhaust his administrative remedies. (Def.'s Summ. J. Br. at 11-15.) In his Response, Plaintiff concedes that he does not assert any claims based on disciplinary action other than his discharge. (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. [Docket No. 56] ("Pl.'s Resp.") at 8-9.)

[3] Local Civil Rule 7.05 requires that a party opposing a motion for summary judgment include in its opposition "a concise statement of the material facts in dispute," and that each alleged material fact in dispute be supported by specific citation to record evidence. *See* D.S.C. Local Civil Rule 7.05(5). Plaintiff fails to comply with Local Civil Rule 7.05. Unable to identify specific facts that he contends are material and disputed, Plaintiff simply inserts his own fact narrative, leaving it to the Court to determine which, if any, of the facts set forth in Defendant's Statement of Facts are alleged by Plaintiff to be material and disputed. (*See* Pl.'s Resp. at 1-6.) Notwithstanding Plaintiff's failure to comply with Local Civil Rule 7.05, any arguments by Plaintiff that relate to purported fact issues will be addressed in the analysis of Plaintiff's allegations regarding his *prima facie* case or pretext.

A.     Plaintiff Cannot Establish a *Prima Facie* Case of Discriminatory Discharge.

To establish a *prima facie* case of discriminatory discharge under Title VII, Plaintiff must demonstrate, *inter alia*, that similarly situated employees outside of his protected class engaged in the same or substantially the same misconduct but were treated more favorably than he. *See Bryant v. Bell Atlantic Md., Inc.*, 288 F.3d 124, 134 (4th Cir. 2002). Both the Fourth Circuit and this Court have recognized that the burden of demonstrating that alleged comparators are similarly situated in all relevant respects rests squarely on Plaintiff. *Davis v. Centex Homes*, No. 4:09-830, 2011 WL 1525764, at *3 (D.S.C. Apr. 1, 2011) ("When a plaintiff bases her discrimination claim on a similarly situated comparator, it is the plaintiff's task to demonstrate that the comparator is indeed similarly situated.) (citations and punctuation omitted); *Haywood v. Locke*, No. 09-1604, 2010 WL 2711294, at *3 (4th Cir. July 6, 2010) ("Plaintiff[s] [are] required to show that they are similar in all relevant respects to their comparator. Such a showing would include evidence that the employees ... engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.") (citations and punctuation omitted).

In its initial brief, Defendant showed that Plaintiff's *prima facie* case fails because James McDonald ("McDonald"), the employee whom Plaintiff contends was treated more favorably than he, is not a valid comparator. (Def.'s Summ. J. Br. at 16-19.) Specifically, Plaintiff cannot show that McDonald engaged in the same or substantially the same misconduct as Plaintiff and received more favorable treatment, *i.e.*, that McDonald failed to comply with his manager's express instructions with respect to the shuttle run but was not discharged. (*Id.* at 18.) To the contrary, the evidence demonstrates that McDonald and several other drivers in the Florence center were given the option to make the shuttle run following Plaintiff's discharge, rather than

an express instruction to do so, and were therefore free to decline this additional work without disciplinary consequence. (*Id.* at 18 (citing Hanser Decl. ¶¶ 12, 14; McDonald Dep. 22-23).)

Plaintiff does not challenge (nor could he) Defendant's well-supported argument that McDonald did not engage in the same or substantially the same misconduct as Plaintiff, and is therefore not a valid comparator for purposes of Plaintiff's discriminatory discharge claim. (*See* Pl.'s Resp. at 10.) Unable to refute Defendant's arguments with respect to his only alleged comparator, Plaintiff advances two alternative theories in support of his *prima facie* case: (1) that requiring Plaintiff to perform the shuttle run was itself discriminatory; and (2) that Plaintiff's admitted failure to comply with his supervisor's and manager's instructions was not actually insubordinate. (*Id.* at 10-11.) Simply put, these arguments are frivolous.

Plaintiff's claim that requiring him to perform the shuttle run was itself discriminatory is both factually unsupported and legally without merit. As set forth in Defendant's initial brief, decisions regarding Defendant's package delivery operations are reserved under the applicable collective bargaining agreement to management, not Union members, and employees are to complete all assigned work. (Def.'s Summ. J. Br. at 5.) Consistent with this discretion, it is undisputed that Defendant can assign the shuttle run to a particular driver or offer the shuttle run to drivers on a voluntary basis, depending on a variety of factors. (*Id.* at 6-7.) On those occasions where management instructs a driver to do the shuttle run, the driver must perform the assignment or else be subject to disciplinary action. (*Id.*)

In his Response, Plaintiff alleges that "Defendant's assertion that Hanser offered a white driver the **option to volunteer** for the shuttle run, yet he expressly instructed the Plaintiff, a black driver, to do the shuttle run is itself disparate treatment and actually supports McDonald as a valid comparator." (Pl.'s Resp. at 10 (emphasis in original).) Not surprisingly, Plaintiff fails

to cite any record evidence or case law for the proposition that Defendant's management team is prohibited from exercising the managerial discretion accorded them by the collective bargaining agreement with respect to work assignments such as the shuttle run. (*See id.*) Further, there is absolutely no evidence (nor does Plaintiff purport to cite any) that the decision of Sams (African-American) and Hanser to require Plaintiff to make the shuttle run on the day in question was discriminatory, nor does Plaintiff offer any support for his claim that the exercise of this discretion somehow renders McDonald a valid comparator for purposes of Plaintiff's *prima facie* case. (*See id.*) Indeed, the only evidence of record undermines this allegation of disparate treatment, since it is undisputed both that McDonald and other Article 22.3 drivers were required on previous occasions to perform the shuttle run or else face disciplinary action (McDonald Dep. 14-15), and that Plaintiff on previous occasions has been offered the shuttle run on a voluntary basis and allowed to decline the work without disciplinary consequence (Pl. Dep. 88-89; Pl. 9/30/11 Dep. 19.)[4]

---

[4] In connection with his argument that requiring him to perform the shuttle run was itself discriminatory, Plaintiff appears to allege that Sams and Hanser should instead have offered him the shuttle run on a voluntary basis and, if he declined, should then have required an Article 22.3 driver to perform the shuttle run. (Pl.'s Resp. at 10-11.) Plaintiff's opinion regarding the manner in which Defendant should have managed its business operations is irrelevant and unsupported. When management elects to offer the shuttle run on a voluntary basis, the shuttle run is required to be offered to drivers in order of seniority, but when the shuttle run is assigned by management, there is no requirement that management assign the shuttle run to an Article 22.3 driver or the most senior driver available. (*See* Hanser Decl. ¶ 12.) Plaintiff's allegation to the contrary is not supported by the record materials cited in his Response. In the portions of his own deposition that he cited, Plaintiff testified in conclusory fashion that Sams and Hanser should have required one of the Article 22.3 drivers to do the shuttle run because "it's their job," but he acknowledges that he has never been a supervisor and does not know what the rules and procedures are with respect to the delegation of the shuttle run. (Pl. 9/30/11 Dep. 18, 20-21, 24.) The deposition testimony of former employee Octarius Blyther cited by Plaintiff does not even address the issue of whether and to whom the shuttle run should be offered or assigned, much less support Plaintiff's bald allegation that the shuttle run should have been assigned to a particular employee on January 3, 2009. (*See* Blyther Dep. 19-20.) Plaintiff's unsupported speculation is patently insufficient to refute Defendant's well-supported arguments on this issue.

Plaintiff's arguments regarding his admitted failure to comply with his supervisor's and manager's instructions are likewise without merit. As demonstrated in Defendant's initial brief, Plaintiff was discharged based on his failure to comply with the direct and explicit instructions from Sams and Hanser to wait outside of the Florence package center for the Next-Day Air packages to arrive from the Myrtle Beach center, which failure Defendant characterized as insubordination and job abandonment. (Def.'s Summ. J. Br. at 7-9.) In a desperate and transparent attempt to manufacture an issue of material fact, Plaintiff now argues that his admitted failure to perform the work assigned to him was not insubordinate. (*See* Pl.'s Resp. at 10.) Plaintiff asserts that, although he did not agree to perform the work assigned to him despite clear and repeated instructions from both his supervisor and manager, this failure was not "insubordination" because he never actually said the words "I refuse to do the job." (*See id.*)

Plaintiff's argument is mere sophistry. Even viewed in the light most favorable to Plaintiff, including by accepting verbatim Plaintiff's account of the conversations between him and Sams and Hanser on January 3, 2009, it is undisputed that (i) Plaintiff was told repeatedly by two members of Defendant's management team that he was required to wait outside of the Florence package center for the Next-Day Air packages to arrive from the Myrtle Beach center; (ii) Plaintiff understood these instructions; (iii) at each point in the prolonged discussions with his management team in which the instruction was repeated, Plaintiff objected to the assignment instead of performing the assignment as instructed; and (iv) at no point prior to or after he was advised of his discharge did Plaintiff agree to perform the assignment. (*See* Pl. Dep. 95, 100, 103-104, 107-09, 111, 117-18, 119-20, 126.) Notwithstanding these admissions, Plaintiff now claims that he was not insubordinate because he never said the words "I refuse to do the job." (*See* Pl.'s Resp. at 10.) In Plaintiff's estimation, an employee is entitled to ignore the

- 6 -

instructions of his or her supervisor and effectively filibuster the employer's operations indefinitely without disciplinary consequence, even in the context of the extremely time-sensitive delivery operations at issue here, so long as he or she never says the words "I refuse to do the job." Simply put, Plaintiff's distinction between his admitted failure to agree to perform the work assignment and an express refusal to perform the work assignment is a distinction without a difference. *Jackson v. AVX Corp.*, No. 4:09-830, 2010 WL 3893789, at *8 (D.S.C. July 7, 2010) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *Dickey v. Carolina Children's Home*, No. 3:09-867, 2010 WL 2571848, at *2 (D.S.C. June 21, 2010) ("[A] weak issue of fact does not prevent the court from granting judgment as a matter of law in favor of Defendant.") (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 (2000)).

     In addition to being disingenuous and immaterial, Plaintiff's distinction between his admitted failure to comply with his manager's work instructions and an express refusal to perform the work assignment is also irrelevant. It is well established that the proper focus of the discrimination inquiry is the employer's honest, good-faith belief regarding the employee's conduct, not the employee's subjective self-assessment. *See, e.g.*, *Hill v. Michelin, N.A.*, 252 F.3d 307, 315 (4th Cir. 2001) ("[W]hen an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.") (citing *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)); *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) ("[I]t is the perception of the decision maker

which is relevant, not the self-assessment of the plaintiff.").

Consistent with the above-cited decisions, the court's analysis here is properly focused on whether Sams and Hanser honestly believed that Plaintiff's continuous objections to the work assignment and his failure to perform the assignment constituted insubordination, and not whether Plaintiff intended these actions to be construed as a refusal to perform the assignment. As to this issue, there is absolutely no evidence to undermine the testimony given by Sams and Hanser regarding their belief that Plaintiff failed to comply with their clear work instructions. *See Kun v. Berkeley County Gov't*, 214 F. Supp. 2d 559, 565-66 (D.S.C. 2001) (holding that supervisor's belief that the plaintiff failed to follow directions constituted a legitimate, non-retaliatory reason for disciplinary action, regardless of whether that belief was ultimately correct).

Because Plaintiff cannot point to similarly situated employees outside of his protected class who engaged in the same or substantially the same misconduct but were treated more favorably than he, and because Plaintiff's self-serving allegations regarding whether his admitted failure to perform the work assignment constituted insubordination are without merit, Plaintiff's *prima facie* case fails and summary judgment on his discriminatory discharge claim is warranted.

     B.    <u>Plaintiff cannot demonstrate that Defendant's legitimate, non-discriminatory reasons for his discharge were a pretext for unlawful race discrimination.</u>

Even if Plaintiff could establish a *prima facie* case (which he cannot), summary judgment is still warranted because Plaintiff cannot demonstrate that Defendant's legitimate, non-discriminatory reasons for his discharge were a pretext for unlawful race discrimination.[5] To satisfy his burden with respect to pretext, Plaintiff must demonstrate that "as between [the

---

[5] Plaintiff does not dispute that Defendant's reason for his discharge constitutes a legitimate, non-discriminatory reason. (*See* Pl.'s Resp. at 11.)

- 8 -

discriminatory reason] and the defendant's explanation, [the discriminatory reason] was the more likely reason for the dismissal, or that employer's proffered explanation is simply unworthy of credence." *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996). As set forth in Defendant's initial brief, Plaintiff cannot satisfy this burden because the undisputed evidence confirms that he was discharged based on his failure to comply with the direct and explicit instructions from Sams and Hanser to wait outside of the Florence package center for the Next-Day Air packages to arrive from the Myrtle Beach center, and there is absolutely no evidence suggesting otherwise. (Def.'s Summ. J. Br. at 19-20.)

Notwithstanding the wealth of authority recognizing that self-serving opinion or speculation is not sufficient to demonstrate pretext, Plaintiff relies exclusively on this type of alleged evidence in his opposition to Defendant's motion for summary judgment. Specifically, in an effort to demonstrate that Defendant's legitimate, non-discriminatory reason for his discharge was pretextual, Plaintiff cites (1) his failure to qualify as a driver in 2005, 2006, and 2008; and (2) the inadmissible and conclusory allegations of two other employees regarding race discrimination generally. (Pl.'s Resp. at 12-13). As set forth in detail below, Plaintiff's reliance on this alleged evidence is misplaced.[6]

---

[6] Plaintiff devotes a significant portion of his Statement of Facts section to his alleged safety concerns regarding the requirement that he wait outside of the Florence package center. (*See* Pl.'s Resp. at 4-5.) These allegations are without merit. First, Plaintiff's after-the-fact evidence regarding the 2008 incident involving feeder driver Willie Ford is inadmissible hearsay and should not be considered by the Court. Second, even if considered, it is undisputed that the alleged incident did not result in any harm to Mr. Ford, that it took place in the middle of the night (not in the afternoon when Plaintiff was instructed to wait outside), and that neither Hanser nor Sams were aware of this incident at the time of Plaintiff's discharge. (Hanser Dep. 40; Sams Dep. 36-37.) Third, and most importantly, Plaintiff's argument improperly seeks to second-guess the wisdom of Defendant's management team with respect to its business operations and the safety of its employees. *See Malghan v. Evans*, 118 F. App'x 731, 733 (4th Cir. 2004) ("The law does not require an employer to make, in the first instance, employment choices that are wise, rational, or even well-considered, as long as they are nondiscriminatory.").

1.  *Plaintiff's arguments regarding employment decisions other than the January 2009 discharge are without merit.*

Unable to articulate a single fact relating to the January 2009 discharge that shows or even suggests that the discharge was motivated by race discrimination,[7] Plaintiff is forced to argue that a handful of isolated events over the four years that preceded his discharge are evidence of pretext, citing his failure to qualify as a package car driver in May 2005, March 2006, and in early 2008, and his being required in February or March 2008 to recite certain safety protocols. (*See* Pl.'s Resp. at 12-13.) As set forth below, Plaintiff's allegations regarding these events are without merit.

As an initial matter, nearly all of Plaintiff's allegations regarding these employment decisions are based on inadmissible hearsay. For example, Plaintiff's sole basis for his allegation that employees Phillip Santos and Chris Sims incorrectly sheeted a package in 2008 but were not disqualified from driver positions is Plaintiff's alleged out-of-court conversations with Santos and Sims. (Pl. Dep. 158-63.) (*Compare* Pl.'s Resp. at 12-13, *with* Pl. Dep. at 147, 155, 158, 161, 182-83, 188; Pl. 9/30/11 Dep. 58, Ex. 14, 61, Ex. 16.) The court should not consider Plaintiff's inadmissible hearsay. *See Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1251-52 (4th Cir. 1991) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment."); *Greensboro Pro. Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

---

[7]   In his Response, Plaintiff states that pretext can be demonstrated through evidence of an employer's "inconsistent post-hoc explanations" for its employment decision, and vaguely refers the court to alleged "inconsistencies" in the testimony of Brad Hanser. (Pl.'s Resp. at 11-12.) Contrary to Plaintiff's implication, there is no inconsistency in the deposition or declaration testimony of Hanser, nor does Plaintiff purport to cite any such inconsistency. (*See id.*) Instead, Plaintiff merely repeats his argument regarding the alleged distinction between his failure to perform the assignment as instructed and an express refusal to perform the assignment. As demonstrated in Section II (A), *supra*, this argument is without merit.

Even if considered, Plaintiff's allegations are not probative of alleged race discrimination with respect to his January 2009 discharge. None of the events cited by Plaintiff involved a discharge for insubordination, and each of the decisions involved circumstances completely distinct from the circumstances of Plaintiff's January 2009 discharge. Moreover, certain of the decisions are temporally remote from the discharge (the 2005 and 2006 disqualifications) or involved a different alleged decisionmaker than his discharge (the 2008 safety protocol incident).

Finally, even if considered and potentially relevant, Plaintiff's allegations regarding these employment decisions fail because he cannot point to specific evidence showing or even suggesting that these employment decisions were motivated by race discrimination. With respect to Plaintiff's 2006 disqualification and the requirement that he recite the safety protocol in 2008, Plaintiff insists that these decisions were unfair and discriminatory, but fails to cite the court to any alleged comparator evidence or other circumstances suggesting these decisions were based on race discrimination. (Pl.'s Resp. at 12-13.) Plaintiff's bald allegations regarding these prior events are insufficient to sustain Plaintiff's burden to demonstrate pretext in response to Defendant's well-supported motion for summary judgment. *United States v. Middleton*, No. 2:04-0357, 2005 WL 2201091, *2 (D.S.C. May 19, 2005) ("It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions.").

With respect to his 2005 and 2008 disqualifications, Plaintiff purports to offer alleged comparator evidence, but this evidence fails upon closer examination. For example, Plaintiff argues that the driver qualification process in May 2005 was discriminatory because other employees allegedly were not required to back up as part of the road test or were given multiple

chances to complete the test, but admits that the two individuals whom he alleges received more favorable treatment are an African-American female and a Caucasian male.  (Pl. Dep. 153.)  When asked in his deposition how these allegations would suggest race discrimination, in view of the fact that one of the alleged comparators was also African-American, Plaintiff switched tacks and asserted that he was discriminated against based on gender with respect to the African-American comparator and discriminated against based on race with respect to the Caucasian comparator.  (*Id.*)

> 3. *Plaintiff's argument regarding alleged discrimination against other employees is without merit.*

Plaintiff's argument regarding alleged discrimination against other employees in the Florence package center is likewise groundless.  Plaintiff's entire argument on this issue consists of a single sentence in which Plaintiff asserts in conclusory fashion that "[o]ther employees at the Florence center have indicated that Hanser was acting discriminatory [sic] towards them, including Mr. Blyther (black male) and a part-time supervisor named Tonya (black female)."  (Pl.'s Resp. at 13.)  The opinions expressed by these two employees are insufficient to sustain Plaintiff's burden to demonstrate pretext.

As an initial matter, the opinion allegedly expressed by Tonya (last name apparently unknown) is inadmissible hearsay.  Plaintiff testified in his deposition that he spoke with Tonya by telephone at some unspecified point in time, and that although he did not remember what he or Tonya said during the conversation, she indicated to Plaintiff during that she believed Hanser had discriminated against her, which Plaintiff understood to refer to discrimination on the basis of her race.  (Pl.'s Dep. 138-41.)  Plaintiff does not offer any testimony directly from Tonya, nor can he point to other circumstances that would render this hearsay statement admissible.

Accordingly, this alleged statement should not be considered by the court. *See Greensboro Pro. Fire Fighters Ass'n, Local 3157*, 64 F.3d at 967.

Even if considered, the opinions expressed by Tonya and Blyther are not probative of alleged discriminatory discharge in this case. Plaintiff alleges that Defendant discriminated against him individually on the basis of his race by discharging him in January 2009, and does not assert a pattern or practice race discrimination claim. (*See generally* Compl.) Accordingly, the only issue before the court is whether Defendant engaged in race discrimination with respect to Plaintiff's discharge, and the fact that one or more other employees believe they were subjected to alleged discrimination does not make it more or less probable that Plaintiff was discharged because of his race. *See Schrand v. Fed. Pac. Elec. Co.*, 851 F.2d 152, 156 (6th Cir. 1988) (refusing to find that testimony by other employees alleging that the defendant discriminated against them was relevant because, among other things, plaintiff "expressly stated that he was not attempting to establish a pattern and practice case").

Finally, even if considered and potentially relevant, the purported comments by Tonya and Blyther are insufficient to sustain Plaintiff's burden to demonstrate pretext. The opinion expressed by Tonya to Plaintiff is nothing more than a conclusory and generalized subjective assertion of a perceived bias on the part of Hanser with respect to an unspecified employment decision. (*See* Pl. Dep. 141.) Blyther's testimony is likewise generalized. In the portion of his deposition cited by Plaintiff, Blyther states that he believes there is a difference in the treatment of African-American employees and Caucasian employees by Defendant. (Blyther Dep. 13.) Plaintiff fails to cite any testimony on the part of Blyther regarding specific actions or comments on the part of Hanser or other management personnel that would indicate a bias against African-Americans generally or against Plaintiff specifically. (*Id.*) Neither employee purports to have

personal knowledge of or express an opinion as to the circumstances of Plaintiff's discharge, nor does Plaintiff make any attempt to show that "the circumstances involving the other employees [were] such that their [terminations could] logically or reasonably be tied to the decision to terminate him." *Curtis v. Okla. City Pub. Schs. Bd. of Educ.*, 147 F.3d 1200, 1217 (10th Cir. 1998) (internal punctuation omitted); *see also Schrand*, 851 F.2d at 156 (holding the court committed reversible error by admitting testimony of two former employees of defendant company because no evidence tied the testimony to employer's decision to discharge plaintiff). Without such evidence, there is no basis upon which to conclude that the alleged discrimination experienced by these employees is relevant to whether Plaintiff was discharged because of his race, nor does this generalized testimony suggest that Defendant's legitimate reasons for Plaintiff's discharge were pretextual.

In sum, the law is clear that "a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate non-discriminatory reasons for an adverse employment action." *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989). Here, Plaintiff has failed to come forward with evidence showing that Defendant's explanation is unworthy of credence, and has failed to offer any other form of circumstantial evidence probative of unlawful race discrimination, relying instead on his self-serving, unsubstantiated, and in many cases inadmissible allegations of discrimination. Because these allegations are not sufficient to sustain Plaintiff's burden in opposing Defendant's well-supported motion, summary judgment on his discriminatory discharge claim is warranted.

### III.    CONCLUSION

For the reasons stated herein, and in its initial brief, Defendant respectfully requests that this Court grant its Motion for Summary Judgment and dismiss the claims set forth in the Complaint with prejudice.

|  |  |
|---|---|
| | s/Susan P. McWilliams |
| | Susan P. McWilliams     Fed. ID No. 3351 |
| | smcwilliams@nexsenpruet.com |
| | NEXSEN PRUET, LLC |
| | 1230 Main Street, Suite 700 |
| | Columbia, South Carolina 29201 |
| | Tel: 803-253-8221 |
| | Fax: 803-727-1476 |
| | |
| | Glenn G. Patton (admitted *pro hac vice*) |
| | glenn.patton@alston.com |
| | ALSTON & BIRD LLP |
| | 1201 W. Peachtree Street |
| | Atlanta, Georgia 30309 |
| | Tel:  404-881-7000 |
| | Fax:  404-881-7777 |
| | |
| | Charles A. Gartland II (admitted *pro hac vice*) |
| | chuck.gartland@alston.com |
| | ALSTON & BIRD LLP |
| | The Atlantic Building |
| | 950 F Street, NW |
| | Washington, DC 20004 |
| | Tel:  202-239-3636 |
| | Fax:  202-654-4808 |
| January 10, 2012 | |
| | Attorneys for Defendant |
| Columbia, South Carolina | United Parcel Service, Inc. |