UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| ERIC KELLEY, | ) | Civil Action No.: 4:10-CV-01420-RBH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| UNITED PARCEL SERVICE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I.  INTRODUCTION

In this action, Plaintiff brings claims for violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) *et seq*. Presently before the Court is Defendant's Motion for Summary Judgment (Document # 45).  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC.  Because this is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

## II.  FACTS

UPS is a business that delivers small packages around the world. (Hanser Decl.). The facts of this case took part in what is now known as the South Atlantic District. *Id.* In each district, there are hubs and package centers. *Id.*  Package centers are responsible for the pickup and delivery of packages in an assigned area.  *Id.*   This case involves the package center in Florence, South Carolina. *Id.*  The Florence center employs several different classifications of employees, including full-time, package car drivers and part-time, "air drivers" and "inside"

-1-

employees who load, unload and sort packages.  *Id*.   The Florence facility has Article 22.3 drivers who are full-time employees that combine two part-time classifications.  *Id.*  Each center is managed by a Business Manager and then part-time and full-time supervisors. (Hanser Decl.).

Plaintiff began working for Defendant in June 1996. (Plaintiff's Dep. 69, 72). Plaintiff was employed as a vehicle shifter/air driver which consisted of the duties of an air driver as well as moving trailers to and from the docks at the package center for loading or unloading and assisting with sorting packages. (Plaintiff's Dep. 70, 76; Sams Dep. 13).

One of the assignments at the Florence facility was the "shuttle run."  The "shuttle run" job assignment is one that requires an employee to transfer next day air packages from Florence to an airport facility in Columbia on Saturdays. (Hanser Decl). The person that makes this one day a week run must wait on the packages to arrive from Myrtle Beach so that he can load those packages and bring both the Florence and Myrtle Beach packages to Columbia. *Id.* Plaintiff testified  that 22.3 drivers were offered the run on a volunteer basis first, then if they all turned it down, it would be offered to the part time employees on a volunteer basis. (Plaintiff's Dep. 87-89).  He further testified that if all drivers turned it down, that it would then be assigned to a 22.3 Driver. (Plaintiff's 9/30 Dep 14).   He subsequently acknowledged that he did not know the management rules with respect to the delegation of the shuttle run assignments.  (Plaintiff's 9/30 Dep. at 18, 20-21, 24). According to Hanser, the run sometimes is assigned to a particular driver and at times, depending on the circumstances[1], it is offered to drivers on a voluntary basis. (Hanser Decl. p.5, ¶12).

---

[1]  Hanser avers that management considers the number of drivers scheduled to work, the volume of packages, the order in which the driver personnel return after completing their assigned routes, and other factors to determine whether to offer the run on a voluntary basis or assign it to a particular driver.  (Hanser Decl. p.5, ¶12).

Plaintiff was terminated on Saturday, January 3, 2009. (Plaintiff Dep. 9). Brad Hanser was the business manager and Tanisha Sam was the part-time supervisor on duty. (Hanser Dep. at 14-16; Sam Dep. at 8-10).

Plaintiff arrived to work around 8:00 a.m., performed his regular work, and was then told he had to perform the shuttle run. (Hanser Decl. at p.5, ¶13). Plaintiff testified that he ordinarily is given advance notice of assignment of the shuttle run. *Id*. at 93.  However, on this occasion he did not know he was making the shuttle run until after he returned to the center after completing his regular route.[2]  *Id*. at 94.   The Business Manager, Brad Hanser, told Sam that she could not work overtime, so the person making the shuttle run would have to wait outside the building for the Myrtle Beach driver to arrive because Sam had to lock up the building when she left. *Id* at 95, 100. Sam showed Plaintiff a text message from Hanser stating that "whoever's taking the shuttle had to wait on the outside while waiting on the Myrtle Beach driver." *Id*. at 95.  Plaintiff expressed to Sam[3] his concerns for his safety if he had to wait outside and was locked out of the building. *Id*. at 96, 103.  Sam contacted Hanser who asked to speak to Plaintiff. *Id*. at 107-08. Plaintiff told Hanser he felt unsafe and uncomfortable waiting on the outside because he could get sick or may need to contact someone if a package had a high value or was an international package. *Id*. at 108-09.  Hanser was not understanding of Plaintiff's concerns and told Plaintiff he was failing to follow his instructions. *Id*. at 109-10.  Plaintiff told Hanser that he was not refusing to make the shuttle run, but was not willing to wait outside. *Id*. at 111.  Hanser told him he was failing to follow instructions and his employment was, in turn, terminated. *Id*. at 117.

---

[2]  The person making the shuttle run would leave Florence around 4 p.m.
[3]  Plaintiff had expressed this concern to Sam on a prior occasion referencing an incident the year before where an employee was approached at night by two men one of whom had been stabbed and was bleeding. *Id*. at 96-108, 129.

-3-

When Plaintiff was leaving the building, the Myrtle Beach driver was arriving, but Plaintiff proceeded home because Hanser already had terminated his employment.  Id. at 116-126. Hanser then offered the run to other drivers on a volunteer basis. (Hanser Dep. 33).  Article  22.3 driver Jamie McDonald turned the job down and Josh Wells, a part-time employee, ultimately volunteered to make the run. (Hanser Decl.).

III.    STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  *Celotex*, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial.  Fed.R.Civ.P. 56(e); *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment*.  Barber v. Hosp. Corp. of Am.,* 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive

evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. *See Celotex*, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); *see also Cray Communications, Inc. v. Novatel Computer Systems, Inc.*, 33 F.3d 390 (4th Cir. 1994); *Orsi v. Kickwood*, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.    DISCUSSION

Title VII makes it unlawful for an employer to discriminate against an employee with respect to compensation, terms, conditions or privileges of employment on the basis of race. 42 U.S.C. §2000e-2(a). In the absence of direct evidence of discrimination, courts apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[4] Under the *McDonnell Douglas* framework, Plaintiff has the initial burden of establishing a *prima facie* case of discrimination. To establish a *prima facie* case of racial discrimination, a plaintiff must show (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) that similarly-situated employees

---

[4]The *McDonnell Douglas* analysis was refined in *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

outside the protected class received more favorable treatment. *White v. BFI Waste Services, LLC*, 375 F.3d 288, 295 (4th Cir. 2004). The fourth element can also be established by presenting evidence raising an inference of discrimination. *See Miles v. Dell, Inc.*, 429 F.3d 480, 486-87 (4th Cir.2005); *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 851 n. 2 (4th Cir.2001) (citing *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

If Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the disparate treatment. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). This is merely a burden of production, not of persuasion. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993).

Once Defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination *vel non*." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000)(citing *Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reasons, but was pretext for discrimination. *Reeves*, 530 U.S. at 143. Throughout the burden shifting scheme set forth in *McDonnell Douglas*, the ultimate burden of proving that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude defendant intentionally discriminated against him.

The only claims that Plaintiff set forth in his EEOC complaint were the events from his January 3, 2009 termination. The only claims that can be maintained in a Title VII lawsuit are

those that were stated in the initial charge and others that are reasonably related. *Evans v Technologies Applications & Service Company*, 80 F.3d 954, 963 (4th Cir. 1996). If "the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Dennis v County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). The factual allegations made in formal litigation have to correspond to those set forth in EEOC. *See Chacko v Patuxent Institution*, 429 F.3d 505, 509 (4th Cir 2005). Here, Plaintiff's claims about his disqualifications from becoming a driver are not related to his termination for gross insubordination. Therefore, they may not be maintained as independent claims of discrimination.

Plaintiff argues that he meets the burden scheme set forth in *McDonnell Douglas*. Plaintiff claims that he can, in fact, point to a similarly situated employee outside of his protected class that was treated more favorably than he was. He claims that Jamie McDonald is a valid comparator because he is an air driver at the Florence facility under the supervision of Brad Hanser and was working on the day of the discharge. Plaintiff asserts that because Hanser was white and was given the option to make the shuttle run and Plaintiff was expressly instructed to make the drive that McDonald was treated more favorably. Defendant argues that McDonald is not a valid comparator because he was given an option and was free to decline the job, so declining was not an act of insubordination.

The plaintiff must prove that the comparators upon whom he relies are similarly situated "in all relevant respects." *Woodward v United Parcel Serv., Inc.*, 306 F.Supp.2d 597, 575, quoting

*Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997);citing *Mallory v. Booth Refrigeration Supply Co.*, 882 F.2d 908, 912–13 (4th Cir.1989). "Thus, to be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v Toledo Hosp.,* 964 F.2d 577, 583; citing *Mazzella v. RCA Global Communications, Inc.*, 642 F.Supp. 1531 (S.D.N.Y.1986), aff'd, 814 F.2d 653 (2d Cir.1987); *Linear v. Safeway Grocery,* 843 F.2d 298 (8th Cir.1988); *Cox v. Electronic Data Systems Corp.*, 751 F.Supp. 680 (E.D.Mich.1990).

Here, McDonald is not a valid comparator. McDonald was given the option of accepting the shuttle run assignment while Plaintiff was instructed to wait outside as part of the shuttle run assignment. Plaintiff refused to wait outside the building as instructed and was terminated. McDonald was not instructed to do anything; therefore, the opportunity for adverse employment action was not present. Also, the adverse employment action at issue results from a failure to follow instructions, not a refusal to make the shuttle run. Thus, Plaintiff and McDonald did not engage in the same conduct and were not similarly situated.

To the extent Plaintiff is arguing that the facts of this case create an inference of discrimination sufficient to state a prima facie case, the argument fails. Plaintiff acknowledged that he did not know the rules and regulations of management with respect to the protocol of assigning or offering the shuttle run. He fails to create an issue of fact as to the proper protocol.

Additionally, Plaintiff asserts that the treatment of Plaintiff prior to discharge supports a showing of discrimination and, therefore, should be taken into consideration. "Other evidence that may be relevant to any showing of pretext includes facts as to the petitioner's treatment of respondent during his prior term of employment ... and practice with respect to minority employment." *McDonnell Douglas,* 411 at 804-5. However, "isolated incidents or random comparisons demonstrating disparities in treatment may be insufficient to draw a *prima facie* inference of discrimination." *Houck v Polytechnic Inst. & State Univ.*, 10 F. 3d 204, 206-1 (4th Cir. 1993). The evidence that Plaintiff is attempting to use to prove that he was discriminated against on other occasions does not indicate that they were a result of Plaintiff's race. Plaintiff fails to present evidence that these past incidents were based on discrimination.

In 2005, Plaintiff was disqualified from becoming a full-time, air driver because he failed a road test. *Id* at 148. Plaintiff asserts that Hanser administered the test. *Id.* at 149. He asserts that he was told by the human resources department that he did not need to take another road test but David Brandon made him take the test again. *Id.* at 150, 164. He asserts that he was treated unfairly in this incident because two other employees were not required to "do any backing" as part of their road tests. *Id.* at 151. However, one of the other two employees was an African American. *Id.*

In 2006, he was disqualified by Hanser for failing to scan a package. *Id.* at 147. He does not show how this was based on race. In 2007 or 2008 (Plaintiff cannot recall) Plaintiff was again disqualified for sheeting packages incorrectly. *Id* at 154. Plaintiff asserts that he sheeted the packages as he was instructed to by an on car supervisor named Blake. *Id.* at 154-55, 160. He

presents his hearsay testimony that other, white employees sheeted the same way and were not disqualified. There is no indication that it involved the same decision-maker or the same circumstances. *Id.* at 154-63. Plaintiff was disqualified on another occasion for failure to recite required memorized material. *Id* at 166. According to Plaintiff, he was told in school that he needed to know the "ten point commentary," but it was not necessary to be able to recite the fine points under each of the ten points. *Id.* at 165-66. David Brandon removed him as an air driver for a week because he could not recite the material. *Id.* at 170-71. Plaintiff fails to make a showing that any of these incidents involved discrimination based on race.

Plaintiff also claims that other employees have indicated discriminatory behavior towards them. Octavious Blyther stated he felt a difference in treatment between black and white employees. (Bylther Dep 13). However, he did not have any specific facts other than this general statement. Plaintiff also claimed that during a telephone conversation with an employee named Tonya, she stated that she had been treated in a discriminatory manner. Based on the record presented, the statements Plaintiff claims Tonya made are inadmissible hearsay. *See* Federal Rule of Evidence 801(c).

Assuming, for the sake of argument, Plaintiff sets forth a prima facie claim, defendant has presented its legitimate, non-discriminatory reason for termination; namely, failure to follow instructions. Plaintiff fails to create an issue of fact as to pretext based on the evidence presented. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude defendant intentionally discriminated against him based on his race. It is not necessary to decide "whether the reason was wise, fair, or even correct, ultimately, so long as it truly was

-10-

the reason for the plaintiff's termination." *Hawkins v. Pepsico*, 203 F.3d 274, 279 (4thCir. 2000)(quoting and citing *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299(4th Cir. 1998); *DeJarnette*, 133 F.3d at 299 ("[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination ...." (internal quotation marks omitted)); *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 277 (4th Cir.1995) ("We have recognized the importance of giving an employer the latitude and autonomy to make business decisions, including workplace reorganization, as long as the employer does not violate the ADEA."); *Jiminez v. Mary Washington College*, 57 F.3d 369, 377 (4th Cir.1995) ("Title VII is not a vehicle for substituting the judgment of a court for that of the employer"). It is the perception of the employer that is critical. *Hawkins*, 203 F.3d at 280. Even a reasoned decision based on incorrect facts is not evidence of pretext. *Pollard v. Rea Magnet Wire Co.*, 824 F.3d 557, 559 (7th Cir. 1987), *cert. denied*, 484 U.S. 977 (1987). In sum, Plaintiff fails to present sufficient evidence to show that Defendant discriminated against him because of his race.

## V.    CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion for Summary Judgment (Document # 45) be granted and this case be dismissed in its entirety.


           s/Thomas E. Rogers, III
           Thomas E. Rogers, III
           United States Magistrate Judge

August 2, 2012
Florence, South Carolina

-11-