IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Eric Kelley, ) | Civil Action No.: 4:10-cv-1420-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| United Parcel Service, Inc., ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff Eric Kelley ("Plaintiff") filed the above action against Defendant United Parcel Service ("Defendant"), his employer, alleging discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C §§ 2000e–2000e-17 (West 2012). [*See* Compl., Doc. # 1.]

On November 9, 2011, Defendant filed its Motion for Summary Judgment, along with a memorandum in support. [Defs.' Mot., Doc. # 45.] Plaintiff filed his Response on December, 2011 [Pl.'s Resp., Doc. # 56–57], to which Defendant filed a Reply [Def.'s Reply, Doc. # 61].

This matter is before the Court after the issuance of the Report and Recommendation ("R&R") of United States Magistrate Judge Thomas E. Rogers, III.[1] [R&R, Doc. # 69.] In the R&R, the magistrate recommends that the Court grant Defendant's Motion for Summary Judgment and dismiss this case in its entirety. Plaintiff timely filed Objections to the R&R on August 20, 2012. [Obj., Doc. # 70.]

For the following reasons, this Court adopts the magistrate's recommendation.

---

[1] In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Rogers for pretrial handling.

**Background**[2]

This case involves Defendant's package center in Florence, South Carolina. The Florence center employs several different classifications of employees, including full-time drivers and part-time drivers. The Florence facility also has so-called "Article 22.3" drivers, wherein two part-time classifications are combined so that the employee works a full-time schedule. One of the assignments at the Florence facility was the "shuttle run." The shuttle run job assignment is one that requires an employee to transfer next-day air packages from Florence to an airport facility in Columbia on Saturdays. The person that makes this weekly run must wait on the packages to arrive from Myrtle Beach so that he can load those packages and bring both the Florence and Myrtle Beach packages to Columbia.

Plaintiff, an African-American male, was a part-time employee of Defendant who, among other things, worked as a driver. [*See* Compl., Doc. # 1, at ¶ 6; Pl.'s Resp., Doc. # 56, at 1–2 (citing Plaintiff's deposition testimony).] On Saturday, January 3, 2009, Plaintiff was terminated after an incident involving the shuttle run. That day, Plaintiff arrived to work around 8:00 a.m., performed his regular work, and was then told he had to perform the shuttle run. Plaintiff testified that he did not know he was making the shuttle run until after he returned to the center after completing his regular route. Because the manager would not allow Plaintiff's direct supervisor to work overtime, and the facility was about to close, the person making the shuttle run would have to wait outside the building for the Myrtle Beach driver to arrive because Plaintiff's direct supervisor had to secure the building when she left.

---

[2] The facts of this case, including citations to the record, are discussed more thoroughly in the magistrate's R&R. [See R&R, Doc. # 69, at 1–4.]

Plaintiff expressed, to both his direct supervisor and the manager, concerns for his safety if he had to wait outside and was locked out of the building. On the phone with the manager, Plaintiff explained again he was concerned and was unwilling to wait outside. The manager told Plaintiff that he was not following instructions, and in turn, terminated his employment. When Plaintiff was leaving the building, the Myrtle Beach driver was arriving, but Plaintiff proceeded home because the manager already had terminated his employment. The manager then offered the run to other drivers on a volunteer basis. Article 22.3 driver Jamie McDonald ("Mr. McDonald") turned the job down and another part-time employee ultimately conducted the shuttle run.

## **Standard of Review**

The magistrate judge makes only a recommendation to the district court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) ("*[D]e novo* review [is] unnecessary in . . . situations when a party makes general and conclusory objections that do not direct the court to a specific error in the

magistrate's proposed findings and recommendation."). The Court reviews only for clear error in the absence of a specific objection. *See Diamond v. Colonial Life & Accident Ins*. Co., 416 F.3d 310 (4th Cir.2005). Furthermore, in the absence of specific objections to the R&R, this Court is not required to give any explanation for adopting the recommendatio n. *See Diamond*, 416 F.3d at 315; *Camby v. Davis*, 718 F.2d 198 (4th Cir. 1983).

## **Discussion**

Because Plaintiff has not presented any direct evidence of race discrimination, he proceeds under the burden-shifting method of proof established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that burden-shifting scheme, Plaintiff has the initial burden to establish a *prima facie* case of race discrimination by showing (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) that similarly-situated employees outside the protected class received more favorable treatment. *White v. BFI Waste Services, LLC*, 375 F.3d 288, 295 (4th Cir. 2004). If Plaintiff succeeds in establishing his *prima facie* case, the burden then shifts to Defendant to produce "a legitimate, nondiscriminatory reason for the adverse employment action." *Hill v. Lockheed Martin Logistics Mgmt., Inc*., 354 F.3d 277, 285 (4th Cir. 2004). Assuming Defendant meets its burden of production, "the burden shifts back to [ ][P]laintiff to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.' " *Id*. (quoting *Reeves v. Sanderson Plumbing Prods*., Inc., 530 U.S. 133, 143 (2000)).

The magistrate held that Plaintiff's Title VII claim failed because Plaintiff failed to prove a *prima facie* case of racial discrimination, and Plaintiff further failed to show that Defendant's

legitimate reason for discharge was a pretext for racial discrimination.[3] Plaintiff objects to both of these holdings, and the Court will address each in turn.

### I.  *Prima facie* **case under Title VII**

In his Objections, Plaintiff first contends that the magistrate judge erred in finding that Plaintiff had failed to establish a *prima facie* case of discrimination. [*See* Obj., Doc. # 70, at 2–5.] Specifically, Plaintiff objects to the magistrate's holding that he failed to show the fourth prong of his *prima facie* case. [*Id*. at 2–5.] The Court overrules this objection.

In the R&R, the magistrate held that although Mr. McDonald was outside the protected class, he was not similarly situated because Mr. McDonald was given the *option* of accepting the shuttle run assignment while Plaintiff was *instructed* to wait outside as part of the shuttle run assignment. [R&R, Doc. #69, at 8.] Plaintiff argues that the magistrate's characterization of what occurred on January 3, 2009, is flawed, and that what occurred is appropriately framed as follows: Mr. McDonald, a white driver, was given the option to volunteer for the shuttle run while Plaintiff, a black driver, was expressly instructed to do the shuttle run. [Obj., Doc. # 70, at 3.] In this light, Plaintiff argues he was subject to disparate treatment against a similarly situated individual. [*Id*.]

As the magistrate correctly explained, a plaintiff must prove that the comparators upon whom he relies are similarly situated "in all relevant respects." *Woodward v United Parcel Serv., Inc*., 306 F.Supp.2d 567, 575 (D.S.C. 2004) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.

---

[3] The magistrate noted that the only claims Plaintiff is able to maintain in this Title VII lawsuit are those that were stated in his initial charge filed with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff does not object to this finding, and the Court finds that the magistrate correctly discussed the law on this issue. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). Thus, to the extent Plaintiff attempts to raise independent claims of discrimination that were not included in his charge, such as his being disqualified from becoming a driver, those claims fail.

5

1997)). "Thus, to be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v Toledo Hosp*., 964 F.2d 577, 583 (6th Cir. 1992) (citing *Mazzella v. RCA Global Comms., Inc*., 642 F.Supp. 1531 (S.D.N.Y.1986), *aff'd*, 814 F.2d 653 (2d Cir.1987)).

This Court agrees with the magistrate that Mr. McDonald was not a valid comparator. Despite Plaintiff's phrasing, Mr. McDonald and Plaintiff did not "engage[] in the same conduct." *See Mitchell*, 964 F.2d at 583. Mr. McDonald declined an opportunity to volunteer, while Plaintiff failed to perform a task after being expressly directed to do so. Plaintiff attempts to argue that a material issue of fact exists regarding his supposed insubordination because he claims he refused neither the shuttle run nor the instruction to wait outside for the shuttle run. [Obj., Doc. # 70, at 3–4.] However, even viewed in the light most favorable to Plaintiff, it is undisputed that (i) Plaintiff was told repeatedly by two members of Defendant's management team that he was required to wait outside for packages to arrive; (ii) Plaintiff understood these instructions; (iii) at each point in the prolonged discussions with his management team in which the instructions were repeated, Plaintiff objected to the assignment instead of performing the assignment as instructed; and (iv) at no point prior to or after he was advised of his discharge did Plaintiff agree to perform the assignment. [*See* Pl.'s Dep., Doc. # 61-6, at 95:8–22, 100:3–8, 103:14–104:21, 108:13–19, 111:1–25, 117:10–120:22:, 119-20, 126:3–17.] Thus, even if it can be said that Plaintiff did not overtly refuse to follow instructions, this is a distinction without a difference as it is undisputed that he was given an express

order, and that he did not comply with that order.[4]

Even if this Court were to adopt Plaintiff's framing of the issue – that a white driver was asked while a black driver was instructed – Plaintiff would still fail to show that the drivers were similarly situated "in all relevant respects" because Mr. McDonald was an Article 22.3 driver who

---

[4] Plaintiff also makes much ado about whether an issue of material fact exists regarding Defendant's policy on which drivers should be offered the shuttle run before a particular driver is required to do so. [Obj., Doc. # 70, at 3–4.] Plaintiff claims in his objections that, in construing all facts in a light most favorable to him, he has shown that his manager violated company policy by requiring Plaintiff to conduct the shuttle run. [Obj., Doc. # 70, at 3–4.] Plaintiff claims that company policy requires that the shuttle run be offered first to 22.3 drivers like Mr. McDonlad, then offered to part-time drivers like Plaintiff, and, if both 22.3 drivers and part-time drivers refuse the shuttle run, then a 22.3 driver would be required to perform the shuttle run. [*Id*. at 3.] Plaintiff claims that, accepting his version of the policy as true, it "establishes that McDonald is a valid comparator for purposes of surviving summary judgment." [*Id*. at 4.] Plaintiff's argument fails for a number of reasons. First, the only evidence in the record of this supposed policy is Plaintiff's own assertion. *See Riley v. Honeywell Tech. Solutions, Inc*., 323 Fed. App'x 276, 278 (4th Cir. 2009) (holding that Plaintiff's "self-serving contentions . . . were properly discounted by the district court as having no viable evidentiary support."). Second, there is no evidence in the record that managers for Defendant lacked the authority to require part-time drivers to conduct the shuttle run. Third, a review of the record reveals that, in spite of the argument made in Plaintiff's court filings, Plaintiff himself admitted that he did not know when a manager could require a driver to perform the shuttle run. When specifically asked if he knew the rules regarding when management was allowed to require drivers to run the route, Plaintiff responded, "You're asking me about the management part. I don't know." [*See* Pl.'s Dep., Doc. # 61-7, 20:24–21:3.] Coupling this testimony with a lack of any other evidence in the record, any inference that Defendant had a policy that prohibited managers from requiring part-time drivers to perform the shuttle is simply unreasonable. *See Robinson v. Clipse*, 602 F.3d 605, 607 (4th Cir. 2010) (noting that for summary judgment, all <u>reasonable</u> inferences mus be viewed in a light most favorable to the non-moving party); *see also* [Hanser Decl., Doc. # 45-3, at ¶ 12 (explaining that depending on a variety of factors, management could either offer the shuttle run on a voluntary basis or require drivers to perform the run).] Fourth, even under the policy as alleged by Plaintiff in his court filings, he and Mr. McDonald were viewed differently under the supposed policy and thus were not similarly situated "in all relevant respects." *See Jackson v. AVX Corp.*, No. 4:09-830, 2010 WL 3893789, at *8 (D.S.C. July 7, 2010) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

worked full-time driver while Plaintiff was only a part-time employee. [*See* Pl.'s Dep., Doc. # 45-8, 87:16–21 (explaining that Article 22.3 drivers like Mr. McDonald were "full-time" and had "seniority over" Plaintiff).] Thus, even when applying Plaintiff's framework, the Court would still have before it a situation where a full-time driver with seniority over part-time drivers was asked to perform a task, while a part-time driver was required to do so. Plainly, the two drivers would not be subject to the same standards, and there would be differentiating circumstances that would distinguish the employer's treatment of them. *See Mitchell*., 964 F.2d at 583; *see also Ilhardt v. Sara Lee Corp*., 118 F.3d 1151, 1155 (7th Cir.1997) (finding that a full-time employee was not similarly situated to a part-time employee); *Pyatt v. Harvest Hope Food Bank*, No. 3:10–2002–MBS–PJG, 2012 WL 1098632, at *7 (D.S.C. Feb. 1, 2012), R&R adopted by 2012 WL 1098627 (D.S.C. March 29, 2012) (finding that individuals were not similarly situated and that Title VII claim failed as a matter of law, due, in part, to one being a part-time employee while the other was a full-time employee); *Black v. Potter*, No. 4:06–899, 2008 WL 509475, at * 11 (D.S.C. Feb. 21, 2008) (holding that fellow employee was not similarly situated when he held a position higher than that of plaintiff). Therefore, Plaintiff's objections on this issue are without merit.[5] The Court further notes that even if it were to rule in favor of Plaintiff on his objections regarding whether he

---

[5] The Fourth Circuit has also held that the fourth prong of a *prima facie* discrimination claim may be established by presenting evidence raising an inference of discrimination. *Miles v. Dell, Inc*., 429 F.3d 480, 486–87 (4th Cir. 2005). In addition to finding that Plaintiff and Mr. McDonald were not similarly situated, the magistrate also held that Plaintiff failed to present evidence raising an inference of discrimination. [*See* R&R, Doc. # 69, at 8–10.] Plaintiff also objects to this finding, and argues that because he has established pretext, he has shown facts creating an inference of discrimination sufficient to state a *prima facie* case. [*See* Obj., Doc. # 70, at 5.] Plaintiff's objection on this point does nothing more than state the applicable law and refer to his objection discussing pretext. For the reasons discussed in Section II of this Order, as well as the reasons articulated by the magistrate, the Court finds that Plaintiff has failed to show pretext and thus, his objection that his showing of pretext constitutes a showing of discriminatory evidence has no merit.

stated a *prima facie* case of discrimination, his Title VII claim would fail because, as discussed below, Plaintiff cannot show that Defendant's stated reasons for his termination were not its true reasons, but were a pretext for discrimination.

## II.     Pretext

In his pretext objection, Plaintiff does not argue that Defendant did not have a legitimate, nondiscriminatory reason for terminating Plaintiff. [*See* Obj., Doc. # 70, at 6– 7.] However, Plaintiff takes issue with the magistrate's finding that Plaintiff failed to show that the reason given for his termination was pretext. [*Id*.]

In his objection, Plaintiff discusses the legal standard governing summary judgment, and argues that the magistrate erred by considering each allege incident of discriminatory treatment individually, and not considering the "cumulative effect that the several incidents have had on Plaintiff" or the "conclusions that can be drawn fairly therefrom." [*Id*.] However, Plaintiff cites no legal authority for this proposition nor does he object to the magistrate's recitation or characterization of the alleged individual discriminatory incidents. A similar issue has been addressed by a district court within the Fourth Circuit, which granted summary judgment for the defendant and explained as follows:

> [W]hile it is certainly true that a court should examine instances of alleged discriminatory treatment holistically and not atomistically, *see Cook v. CSX Trans. Corp*., 988 F.2d 507, 512 (4th Cir.1993) ("[T]o focus on one piece of the record without considering the whole would distort the permissible inferences to be drawn."), this does not mean that evidence of a large number of meritless claims (or non-cognizable allegations) attains probative value when such claims are aggregated. To the contrary, in the absence of direct or circumstantial evidence of discriminatory intent, careful analysis of claims of disparate treatment in accordance with the well settled *McDonnell Douglas* paradigm is absolutely required.

*Settle v. Baltimore Cnty.*, 34 F.Supp.2d 969, 985–86 (D. Md. 1999).

As the magistrate correctly noted, "the evidence that Plaintiff is attempting to use to prove that he was discriminated against on other occasions does not indicate that they were a result of Plaintiff's race." [*See* R&R. Doc. # 69, at 9.] Specifically, Plaintiff was disqualified from becoming a full-time driver because he failed a road test (while one of the individuals who passed was an African American), Plaintiff was reprimanded for failing to scan packages correctly, and Plaintiff was reprimanded for failing to recite content that was to be memorized. [*Id*.] The sole race-based allegations come by way of hearsay (Plaintiff claims another co-worker told him about being treated unfairly) and a fellow employee who claimed that he felt a difference between white and black employees but offered nothing more than this general allegation. *Id.*[6]

Even when viewing the record in a light most favorable to Plaintiff, and in viewing these instances as a whole, Plaintiff merely shows "a large number of meritless claims . . . or non-cognizable allegations." *See Settle*, 34 F.Supp.2d at 985; *see also Harris v. Gen. Motors Powertrain*, No. 98-1394, 1999 WL 7865, at *3 (4th Cir. Jan. 11, 1999) (affirming summary judgment where record contained no evidence surrounding the details of Plaintiff's discrimination allegation); *Cook v. CSX Transp. Corp*., 988 F.2d 507, 512–513 (4th Cir. 1993) (holding that Title VII claim failed where there was no evidence that employer conducted complained-of activities differently when white employees were involved). Thus, Plaintiff's objection is overruled as he fails to create an issue of fact as to pretext. *See DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) ("[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination . . . .").

---

[6] The Court reiterates that Plaintiff did not object to the magistrate's description of the alleged discriminatory incidents.

10

**Conclusion**

The Court has thoroughly analyzed the entire record, including the R&R, objections to the R&R, and the applicable law.  The Court has further conducted the required review of all of the objections and finds them without merit.  For the reasons stated above and by the magistrate, the Court hereby overrules all of Plaintiff's objections and adopts the magistrate's R&R as modified herein.

**IT IS THEREFORE ORDERED** that, pursuant to Federal Rule of Civil Procedure 56, Defendant's Motion for Summary Judgment [Doc. # 45] is **GRANTED**, and this case is **DISMISSED** *with prejudice* in its entirety.

**IT IS SO ORDERED**.

s/ R. Bryan Harwell<br>
R. Bryan Harwell<br>
United States District Judge

Florence, South Carolina<br>
August 30, 2012